IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
*Southern Division*

TRUSTEES OF THE NATIONAL
ELECTRICAL BENEFIT FUND *et al.*,     *

    Plaintiffs,     *

v.                                                                    Case No.: GJH-21-2541

                                                     *

CURRENT ELECTRIC
OF BATTLE CREEK, INC.               *

    Defendant.
                                                     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Plaintiffs, Trustees of the National Electrical Benefit Fund ("NEBF") and Trustees of the National Electrical Annuity Plan ("NEAP"), bring this action against Defendant Current Electric of Battle Creek, Inc., under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq*. Following Defendant's failure to answer or otherwise defend in this action, the Clerk entered default against Defendant on April 1, 2022, ECF No. 11. Now pending before the Court is Plaintiff's Motion for Default Judgment against Defendant pursuant to Fed. R. Civ. P. 55(b). ECF No. 10. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiffs' Motion for Default Judgment is granted, and judgment is entered against Defendant in the amount of $6,370.52 for NEBF and $30,905.60 for NEAP.

**I.     BACKGROUND**

The following facts are established by the well-pled allegations in the Complaint, ECF No. 1, and evidentiary exhibits in support of the Motion for Default Judgment, ECF Nos. 10-1 &

10-2. The NEBF and NEAP are multiemployer employee pension benefit plans within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2), which has been established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA"). ECF No. 1 ¶¶ 4–5; *see* ECF No. 10-2. Employers agree to participate in NEBF and NEAP pursuant to collective bargaining agreements with the IBEW or one of its affiliated local unions. *Id.* ¶ 6. Both NEBF and NEAP are administered at 400 Research Boulevard, Suite 500, Rockville, Maryland 20850-3238. *Id.* ¶¶ 4–5.

Plaintiffs state upon information and belief that Defendant Current Electric of Battle Creek, Inc. is a Michigan corporation whose main place of business is 322 McIntyre Lane, Springfield, Michigan 49037. *Id.* ¶ 7. Defendant is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is engaged in an industry affecting commerce. *Id.*

At all times relevant to the action, Defendant was a signatory to collective bargaining agreements ("Collective Bargaining Agreements") with IBEW Local Union 445, the collective bargaining representatives for Defendants employees. *Id.* ¶ 8. Plaintiffs contend that the Collective Bargaining Agreements obligated Defendant to submit contributions to the NEBF and NEAP on behalf of employees covered by the agreements for all relevant periods. *Id.* Further, Plaintiff Trustees allege that, pursuant to the Collective Bargaining Agreement, Defendant was also bound to all terms and conditions of the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund ("NEBF Trust Agreement") and the Agreement and Trust for the National Electrical Annuity Plan ("NEAP Trust Agreement"), which governed administration of the NEBF and NEAP, respectively. *Id.* ¶¶ 12, 21.

Plaintiff Trustees of the NEBF allege that Defendant "failed to make all of its required contributions to the NEBF on behalf of the employees covered by the Collective Bargaining Agreements," and that, despite Defendant's breaches of its obligations, they "will be required to provide benefits to the NEBF participants employed by Defendant upon their retirement, based on their years of service, which would include that period during which Defendant failed to contribute." *Id.* ¶¶ 14, 18. This, Plaintiff Trustees of the NEBF contend, could cause a reduction of the "corpus of the trust," and endanger the rights and benefits of other participants and beneficiaries "on whose behalf contributions have been properly made." *Id.* ¶ 18. The NEBF Trust Agreement also authorized the Trustees to take all necessary actions to recover delinquent contributions. *Id.* ¶¶ 13, 19; *see also* ECF No. 10-2 at 2 (Affidavit of Brian Killian, Contribution Compliance Manager of NEBF & NEAP). Plaintiff Trustees of the NEAP similarly allege that Defendant failed to make all of its required contributions to the NEAP on behalf of employees covered by the Collective Bargaining Agreements and that they "may be required to provide benefits" to NEAP participants upon their retirement, which would include contributions Defendant "was required, but failed, to contribute." ECF No. 1 ¶¶ 23, 27. The NEAP Trust Agreement, likewise, authorized the Trustees to take all necessary actions to recover delinquent contributions. *Id.* ¶ 22.

Plaintiffs bring this action pursuant to Section 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1145, which allows a fiduciary to enforce Defendant's obligations to contribute to plans such as the NEBF and NEAP through a civil action. *Id.* ¶¶ 2, 9–10. Defendant has allegedly failed to contribute to NEBF for work performed by Defendant's covered employees from April 2021 through June 2021, *id.* ¶ 15, and has failed to contribute to NEAP for the same between December 2020 and June 2021, *id.* ¶ 24. According to the Delinquency Reports

3

generated, Defendant failed to pay NEBF at least $4,309.48 in contributions, *see* ECF No. 10-2 at 95 (NEBF Delinquency Report), while Defendant failed to pay NEAP $23,643.50 in contributions during the periods relevant to each. *See id.* at 97 (NEAP Delinquency Report).[1] NEBF and NEAP have made demands for payment from Defendant, but Defendant has failed to pay. *See* ECF No. 10-2 at 3.

Plaintiffs filed the instant Complaint against Defendant on October 5, 2021, ECF No. 1. Defendant was successfully served on October 22, 2021, though its Manager, Justin Burke, ECF No. 8. On November 29, 2021, with no answer having been filed, Plaintiff's moved for default, ECF No. 9, and the Clerk entered default against Defendant on April 4, 2021, ECF No. 11. Both Plaintiffs now seek default judgment against Defendant. Plaintiff Trustees of the NEBF seek $4,309.48 in delinquent contributions; $176.64 in accrued interest; $861.90 in liquidated damages; and $1,022.50 in attorneys' fees and costs—for a total of $6,370.52. *See* ECF No. 1 ¶¶ 14–16; ECF No. 10 ¶ 8; ECF No. 10-1 ¶ 12; ECF No. 10-2 at 95. Plaintiff Trustees of the NEAP seek $23,643.50 in delinquent contributions; $1,510.90[2] in accrued interest; $4,728.70 in liquidated damages; and $1,022.50 in attorneys' fees and costs—for a total of $30,905.60. *See* ECF No. 1 ¶¶ 24–26; ECF No. 10 ¶ 9; ECF No. 10-2 at 97.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] The Complaint states that Defendant owed $1,097.00 in accrued interest. ECF No. 1 ¶ 25. However, the NEBF Delinquency Report attached to Plaintiffs' Motion for Default Judgment includes an additional $413.90 of accrued interest accrued in the interim, thus bringing the total accrued interest to $1,510.90. *See* ECF No. 10-2 at 97. The Complaint, while not including the dollar amount of this additional interest, does request the Court to consider additional interest that will continue to accrue on all delinquent contributions until paid in full. *See* ECF No. 1 at 6–7. Thus, the amount of accrued interest now sought in the Motion for Default Judgment does not exceed in amount or differ in kind from what was sought in the Complaint and the additional $413.90 will be considered in the total interest accrued. *See* Fed. R. Civ. P. 54(c); *Trs. of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. 15-cv-521-GJH, 2016 WL 297425, at *6 (D. Md. Jan. 21, 2016) ("The damages sought by Plaintiffs in their Motion for Default Judgment do not 'differ in kind or 'exceed in amount' that plead for in the Complaint; rather . . . the damages Plaintiffs request in their Motion are precisely the damages plead for in the Complaint, notwithstanding that the total amount of those damages has increased since the time this action was initiated.").

## II.  STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *Choice Hotels Intern, Inc. v. Savannah Shakti Corp.*, No. 11-cv-00438-DK, 2011 WL 5118328 at *2 (D. Md. Oct. 25, 2011) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422; *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (noting that "[t]he defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact," which provide the basis for judgment). Upon a finding of liability, "[t]he court must make an independent determination regarding damages[.]" *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013). Fed. R. Civ. P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum."

5

*Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

## III. DISCUSSION

The Court has subject matter jurisdiction over this action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(e). Venue is proper under 29 U.S.C. § 1132(e)(2), as the NEBF and NEAP are administered in Rockville, Maryland. ECF No. 1 ¶¶ 4–5; *see Bd. Of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Camelot Constr., Inc.*, No. L14-CV-161-LMB-TRJ, 2015 WL 13050031, at *3 (E.D. Va. Apr. 14, 2015); *Trs. of Nat. Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Prot., Inc.*, 578 F. Supp. 94, 95 (D. Md. 1983).

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see Camelot Constr., Inc.*, 2015 WL 13050031, at *3. In the Complaint, Plaintiff Trustees allege that Defendant was obligated under the terms of the Collective Bargaining Agreement, the NEBF Trust Agreement, and NEAP Trust Agreement to make contributions to NEBF and NEAP, but failed to do so from April 2021 through June 2021 and from December 2020 through June 2021, respectively. *See* ECF No. 1 ¶¶ 15, 24. The affidavit of Brian Killian, the Contribution Compliance Manager of the NEBF and the NEAP, and the accompanying NEBF and NEAP Delinquency Reports further establish that Defendant underpaid NEBF by $4,309.48 and NEAP by $23,643.50. ECF No. 10-2 at 95, 97.

29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions, and in which a judgment in favor of the plan is awarded, the court shall award the plan:

      (A) the unpaid contributions,

      (B) interest on the unpaid contributions,

      (C) an amount equal to the greater of—

           (i) interest on the unpaid contributions, or

           (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

      (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

      (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2*); see also Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. Columbus Show Case Co.*, No. 1:14-cv-478, 2014 WL 3811252, at *4 (E.D. Va. Aug. 1, 2014); *Capital Restoration & Painting Co.*, 919 F. Supp. 2d at 686; Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Lake Side Plumbing & Heating, Inc., No. 1:12-CV-00298 LO/IDD, 2012 WL 6203001, at *4 (E.D. Va. Nov. 20, 2012). Thus, assuming the truth of the well-pled allegations in the Complaint, Plaintiffs have established Defendant's liability under the Collective Bargaining Agreements and the NEBF and NEAP Trust Agreements, and Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2).

      In support of their request for damages, along with the affidavit of Brian Killian, ECF No. 10-2 at 1–4, Plaintiffs each submit a Delinquency Report for the time periods for which they are owed contributions. Specifically, NEBF submits a Delinquency Report for the months of April 2021 through December 2021 indicating that $4,309.48 was outstanding from unpaid contributions from the period beginning in April 2021 and ending in June 2021. ECF No. 10-2 at 95. NEAP also submits a Delinquency Report, for the months of December 2020 through

December 2021, indicating that $23,643.50 was outstanding from unpaid contributions from December 2020 through June 2021. *Id.* at 97.

Killian attests that, pursuant to the NEBF and NEAP Trust Agreements and 29 U.S.C. § 1132(g)(2), both NEBF and NEAP are authorized to recover interest on delinquent contributions at a rate of ten percent per annum and liquidated damages in the amount of twenty percent of the delinquency. *See* ECF No. 10-2 at 3. Thus, in addition to the $4,309.48 and $23,643.50 in unpaid contributions owed to NEBF and NEAP, respectively, *see* 29 U.S.C. § 1132(g)(2)(A), Defendant owes $176.64 in interest on the delinquent contributions to NEBF and $1,510.90 in interest to NEAP, *see* 29 U.S.C. § 1132(g)(2)(B), and $861.90 in liquidated damages to NEBF, and $4,728.70 in liquidated damages to NEAP, *see* 20 U.S.C. § 1132(g)(2)(C)(ii).

In support of Plaintiffs request for attorneys' fees and costs in an amount of $1,022.50 for each NEBF and NEAP, Plaintiffs attach the Declaration of Attorney Jennifer Bush Hawkins. ECF No. 10-1. For NEBF, $1,022.50 represents 3 hours of work done by legal assistant Caroline Lippie, at a rate of $145 per hour, .7 hours of work done by Hawkins[3] at a rate of $445 per hour, and one-half of the combined total of a $402.00 filing fee and a $150 invoice for service of process (or $276.00 total), *see id.* at 2–4. For NEAP, $1,022.50 likewise represents 3 hours of work done by legal assistant Caroline Lippie, at a rate of $145 per hour, .7 hours of work done by Hawkins at a rate of $445 per hour, and $276.00, or one half of the combined total of the filing fee and service of process invoice, *see id.* The Court finds the time billed and hourly rate applied to be reasonable and commensurate with the Local Guidelines. Loc. R. App. B (D. Md. 2021) (indicating that a reasonable hourly rate for lawyers admitted to the bar for twenty years or more is between $300 and $475 and a reasonable hourly rate for paralegals/law clerks is between

---

[3] Hawkins has been a licensed attorney since 1994. ECF No. 10-1 at 2.

$95 and $150); *see Nat'l Elec. Benefit Fund v. Allran/Hemmer Elec., LLC*, No. 16-cv-1184-GJH, 2017 WL 1273922, at *4 (D. Md. Jan. 6, 2017) (awarding attorneys' fees and expenses—including "$150.00 for service of process and $400 for filing fees"—to the same counsel for NEBF). Therefore, Defendant owes $1,022.50 in attorneys' fees and costs to each NEBF and NEAP, *see* 29 U.S.C. § 1132(g)(2)(D).

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 10, is granted against Defendant in the total amount of $6,370.52 for NEBF and $30,905.60 for NEAP. Additionally, post-judgment interest shall accrue until the judgment is satisfied pursuant to 28 U.S.C. § 1961. A separate Order shall issue.

Date: <u>August 16, 2022</u>              \_\_\_/s/_____
                                         GEORGE J. HAZEL
                                         United States District Judge